IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOHN STEPHENSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 12-614-SLR |
| | ) |
| GAME SHOW NETWORK, LLC, and | ) |
| WORLDWINNER.COM, INC., | ) |
| | ) |
| Defendants. | ) |

Adam W. Poff, Esquire and James L. Higgins, Esquire of Young, Conaway, Stargatt & Taylor LLP, Wilmington, Delaware. Counsel for Plaintiff. Of Counsel: Daniel W. McDonald, Esquire, William D. Schultz, Esquire, and Christopher C. Davis, Esquire of Merchant & Gould.

Jack B. Blumenfeld, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendant. Of Counsel: Michael K. Friedland, Esquire, Edward M. Cannon, Esquire, and Bridget A. Smith, Esquire of Knobbe, Martens, Olson & Bear, LLP.

**MEMORANDUM OPINION**

Dated: March 27, 2013
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On May 17, 2012, plaintiff John H. Stephenson ("plaintiff") filed this patent infringement action against defendants Game Show Network, LLC ("GSN") and WorldWinner.com, Inc. ("WW") (collectively "defendants"). (D.I. 1) Plaintiff alleges that certain "games of skill tournaments" offered by defendants through their websites infringe his U.S. Patent No. 6,174,237 ("the '237 patent"). (D.I. 1 at ¶ 15) Pending before the court is defendants' motion to transfer venue to the District of Massachusetts (D.I. 7) and defendants' motion to dismiss plaintiff's indirect infringement claims (D.I. 5). The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1338(a). For the reasons that follow, the motion to transfer is denied and the motion to dismiss plaintiff's indirect infringement claims is granted.

## II. BACKGROUND

Plaintiff, an individual, is a resident of Tulsa, Oklahoma. (D.I. 1 at ¶ 1) GSN is a limited liability company formed and existing under the laws of Delaware, with its principal place of business in Santa Monica, California. (D.I. 1 at ¶ 2) WW is incorporated under the laws of Delaware and has its principal place of business in Waltham, Massachusetts. (D.I. 1 at ¶ 3; D.I. 10 at ¶ 2) According to WW, virtually all of its business and technical operations, including the design and programming of its website, worldwinner.com, take place in Waltham, Massachusetts. (D.I. 8 at 2) Further, many of GSN's digital operations are also located in WW's Massachusetts offices. (*Id.*)

## III. STANDARD OF REVIEW

### A. Venue

Section 1404(a) of Title 28 of the United States Code grants district courts the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interests of justice . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Much has been written about the legal standard for motions to transfer under 28 U.S.C. § 1404(a). *See, e.g., In re Link_A_Media Devices Corp.*, 662 F.3d 1221 (Fed. Cir. 2011); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995); *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367 (D. Del. 2012).

Referring specifically to the analytical framework described in *Helicos*, the court starts with the premise that a defendant's state of incorporation has always been "a predictable, legitimate venue for bringing suit" and that "a plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" 858 F. Supp. 2d at 371 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Indeed, the Third Circuit in *Jumara* reminds the reader that "[t]he burden of establishing the need for transfer . . . rests with the movant" and that, "in ruling on defendants' motion, the plaintiff's choice of venue should not be lightly disturbed." 55 F.3d at 879 (citation omitted).

The Third Circuit goes on to recognize that,

> [i]n ruling on § 1404(a) motions, courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the

2

> interests of justice be better served by transfer to a different forum."

*Id.* (citation omitted). The Court then describes some of the "many variants of the private and public interests protected by the language of § 1404(a)." *Id.*

> The private interests have included: plaintiff's forum of preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses - **but only to the extent that the witnesses may actually be unavailable for trial in one of the fora**; and the location of books and records (**similarly limited to the extent that the files could not be produced in the alternative forum**).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* (citations omitted) (emphasis added).

### B. Indirect Infringement

In reviewing a motion filed under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A court may consider the pleadings, public record, orders, exhibits attached to the complaint, and documents incorporated into the complaint by reference. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994). A complaint must contain "a short and plain statement of the claim showing

that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (internal quotation marks omitted) (interpreting Fed.R.Civ.P. 8(a)). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." To demonstrate inducement of infringement, the patentee must establish, first, that there has been direct infringement and, second, that the alleged infringer had "knowledge that the induced acts constitute patent infringement." *Global–Tech Appliances, Inc. v. SEB S.A.*, ⎯⎯ U.S. ⎯⎯, 131 S. Ct. 2060, 2068 (2011). "Inducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *DSU Medical Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part).

Under 35 U.S.C. § 271(c), a patentee must demonstrate that an alleged contributory infringer has sold, offered to sell or imported into the United States a component of an infringing product "knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use." Therefore, § 271(c) "require[s] a showing that the alleged contributory infringer knew that the combination for which [its] component was especially designed was both patented and infringing." *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 377 U.S. 476, 488 (1964).

## IV. ANALYSIS

### A. Venue

With the above "jurisdictional guideposts'" in mind, the court turns to the "difficult issue of federal comity" that transfer motions present. *E.E.O.C. v. Univ. of Pa.*, 850 F.2d 969, 976 (3d Cir. 1988). Plaintiff has not questioned defendants' assertion that the instant law suit could have been brought in the District of Massachusetts and, therefore, that requirement shall not be addressed further. *See* 28 U.S.C. § 1404(a).

#### 1. Choice of forum

Defendant's state of incorporation is a traditional and legitimate venue. Moreover, plaintiffs (as the injured parties) have historically been accorded the privilege of choosing the venue for pursuing their claims. Defendants at bar argue that these customary principles "should be entitled to no deference," because Delaware is not plaintiff's "home turf." (D.I. 8 at 8-9) Defendants' choice of forum, the District of Massachusetts, should instead be the preferred one because of the convenience

5

factors discussed below. (*Id.* at 5) Defendants also question plaintiff's choice of forum, based on his previous filing in the Northern District of Oklahoma, which was dismissed after it was not served. (D.I. 8 at 8) Defendants assert that plaintiff made a "tactical decision to file this second suit" in Delaware, which is clear forum shopping. (D.I. 8 at 8; D.I. 15 at 4) Plaintiff refutes this accusation, alleging that after speaking with the defendants regarding the action, he sought "a more experienced patent forum." (D.I. 12 at 7)

The court declines to elevate defendants' convenience over the choice of a neutral forum selected by both defendants as the situs of their incorporation. *See Cradle IP, LLC v. Texas Instruments, Inc.*, --- F.Supp.2d ----, 2013 WL 548454, at *3 (D. Del. February 13, 2013). Given that defendants operate online gaming websites used throughout the United States, plaintiff, an individual, has chosen a proper forum in Delaware. The parties' choice of forum weighs against transfer.

### 2. Where the claims arise

A claim for patent infringement arises wherever someone has committed acts of infringement, to wit, "makes, uses, offers to sell, or sells any patented invention" without authority. *See generally* 35 U.S.C. § 271(a); *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998) (an infringement claim "arises out of instances of making, using, or selling the patented invention."). Defendants aver that Delaware is "one of only 12 states in which the website cannot possibly work," as "WorldWinner does not allow its games to be played for cash and prizes in . . . Delaware." (D.I. 8 at 1, 4) There are affirmative measures to deny Delaware residents

access to these games. (D.I. 8 at 6) Plaintiff alleges that there are other ways for Delaware residents to play, including the use of the websites to play for reward points. (D.I. 12 at 8) Defendants counter that the "only games [plaintiff] accuses of infringement are the GSN Cash Games on the WorldWinner website." (D.I. 15 at 4)

The complaint specifically references and discusses the "worldwinner.com website" and its "GSN Cash Competitions." (D.I. 1 at ¶ 15) However, the complaint also states that "'GSN Cash Competitions' are meant to include worldwinner.com and other websites operated by either or both [d]efendants that describe similar competitions." (D.I. 1 at ¶ 15)

The terms and conditions of WW's website provide:

> To register and open an account and/or participate in any tournament offered on the Site . . . .
> The rules governing sweepstakes, contests, and tournaments with entry fees and/or prizes are set up by each individual state . . . . [T]he Site DOES NOT offer games requiring a cash entry fee ("Cash Competitions") to users accessing the Site from . . . Delaware . . . ."

(D.I. 10 at ex. 1, section 2.1) Further, the website requires a username, password and email address to register and provides that "[y]ou may choose to play games on the Site without ever depositing money into your account (a 'Non-Cash Player')." (*Id.* at section 2.7) Defendants add no clarity, attesting, "regardless of whether Delaware residents are able to use the GSN website to play other games, that use is irrelevant to the issues of this case." (D.I. 15 at 4) The court is not convinced that the "claims bear absolutely no connection to Delaware." Neither party has carefully chosen words to describe the allegedly infringing games or websites. It is unclear if a Delaware resident may play games not requiring a cash entry fee and if these are the types of games

alleged to infringe the patent. (D.I.8 at 7; D.I. 12 at 8-9)

Although, to some extent, patent infringement claims arise where the allegedly infringing products are designed and manufactured, this argument loses force when the product is not a physical product but, instead, a digital website accessible from anywhere. *Wacoh Co. v. Kionix, Inc.*, 845 F. Supp. 2d 597, 602 (D. Del. 2012). With the lack of clarity as to particular infringement in Delaware, this factor is neutral.

### 3. The parties' relative size

The Third Circuit in *Jumara* indicated that, in evaluating the convenience of the parties, a district court should focus on the parties' relative physical and financial condition. In this case, defendants are both large corporations, conducting business in Massachusetts.[1] Plaintiff, an individual, is a resident of Oklahoma. Defendants have the resources to litigate in Delaware and have indicated their consent to do so by their choice of incorporation. This factor weighs against transfer.

### 4. The convenience of the witnesses

As the Third Circuit in *Jumara* implicitly recognized, litigation is an inconvenient exercise. Therefore, it is not whether witnesses are inconvenienced by litigation but, rather, whether witnesses "actually may be unavailable for trial in one of the fora" that is a determinative factor in the transfer analysis. *Jumara*, 55 F.3d at 879. Setting aside the general argument that party witnesses may be inconvenienced by litigating in Delaware, defendants argue that at least one important non-party witness in this case,

---

[1] While GSN has its principle place of business in California, the court defers to the defendants' assertion that its digital operations are conducted out of Massachusetts. (D.I. 8 at 2)

a former lead developer, may be unavailable in Delaware because the court cannot compel him to appear at trial. (D.I. 8 at 11) Given that defendants simply speculate that this non-party witness would be unwilling to travel, this factor weighs against transfer.

### 5. Location of books and records

The Third Circuit in *Jumara* again advised that, while the location of books and records is a private interest that should be evaluated, it is not a determinative factor unless "the files c[an] not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Defendants aver that the "vast majority of relevant documents in this case are located at WorldWinner's headquarters in Massachusetts." (D.I. 8 at 12) Consistent with the realities of our electronic age, virtually all businesses (especially digitally based ones) maintain their books and records in electronic format readily available for review and use at any location. *Cradle IP*, 2013 WL 548454, at *4. Defendants offer no evidence that such documents would not be transmitted electronically to both plaintiff and his counsel, in Oklahoma and Minnesota, more than a thousand miles away. The court declines to conclude that these same documents could not be made available some three hundred miles away in Delaware for trial. This factor weighs against transfer.

### 6. Practical considerations

This factor, that is, practical considerations that could make the trial easy, expeditious or inexpensive, arguably is where the "difficult issues of federal comity" most dramatically come into play, as it involves a comparison between courts of equal

9

rank to determine their efficiencies,[2] all in the context of the parties' various business and litigation strategies.[3] Each party argues that their choice of forum is more efficient, citing in part to the number of cases per judge and the time to trial. (D.I. 8 at 13-14; D.I. 12 at 14-15) The court declines to enter into a comparison of efficiencies based on this information, as each court and, indeed, each case is fluid and may or may not proceed along a predictable path. As the court recognizes that trial in the District of Massachusetts would be easier and less expensive for defendants and would not seemingly impose a greater burden on plaintiff, this factor weighs in favor of transfer.

### 7. Relative administrative difficulty

Given that trial in this case will be scheduled consistent with the parties' proposals, this factor is neutral.

### 8. Local interest in deciding local controversies

Defendants reiterate that Delaware "has no local interest in this case," other than being the state of incorporation. (D.I. 8 at 14) Defendants aver that this is a Massachusetts controversy, because "virtually all activity related to Stephenson's claims occurred in Massachusetts." (Id.) As explained above, due to the parties' lack of clarity, the court is not convinced that there is no infringement occurring in Delaware. Further, the claimed infringing activity would transpire nationwide as the games are

---

[2] Arguably, this comparison has been punctuated by the fact that this court, unlike those courts in the patent cases pilot program, manages its patent docket without the aid of patent local rules, thus allowing the judges to vary their case management procedures over time and/or from case to case.

[3] In this regard, the court does expect the corporate citizens of Delaware to make themselves available to litigate in Delaware.

played virtually from anywhere users access their computers or other devices. Moreover, patent litigation does not constitute a local controversy in most cases, as patent cases implicate constitutionally protected property rights. The resolution of patent cases is governed by federal law reviewed by a court of appeals of national (as opposed to regional) stature. To characterize patent litigation as "local" undermines the appearance of neutrality that federal courts were established to provide and flies in the face of the national (if not global) markets that are affected by the outcome of these cases." See Cradle IP, 2013 WL 548454, at *5. Therefore, this factor is neutral.

### 9. Remaining *Jumara* Public Interest Factors

The remaining *Jumara* public interest factors - the enforceability of a judgment, the public policies of the fora, and the familiarity of the judge with state law - are neutral.

Defendants have the burden of persuading the court, by a preponderance of the evidence, that the *Jumara* factors warrant transfer. Defendants have not tipped the scales of justice in favor of transfer. Therefore, the court denies the motion to transfer.

### B. Indirect Infringement

While the court must accept all factual allegations in the complaint as true and interpret them in the light most favorable to plaintiff, here, plaintiff has provided no factual basis for the conclusory allegations as to indirect infringement.[4] To wit, plaintiff's complaint states that defendants "have infringed claims of the '237 patent and, unless enjoined from doing so, will continue to do so by using, selling, or offering for sale Stephenson's patented technology **and by inducing and contributing to**

---

[4]The court does not address the prerequisite of direct infringement, as defendants have not moved to dismiss those allegations.

**infringement** of the '237 patent." (D.I. 1 at ¶ 30 (emphasis added)) As to knowledge, defendants received notice of the '237 patent on or about September 8, 2011, through a letter from plaintiff's counsel. (D.I. 1 at ¶ 33)

Plaintiff argues that defendants' awareness of their infringement before the complaint was filed and continuation of their conduct is sufficient to support indirect infringement. (D.I. 11 at 5 (citing *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 565 (D. Del 2012)) As to inducement, plaintiff identifies the corporate relationship between the defendants, arguing that "one . . . actively assisted the other to directly infringe," thereby alleging "with specificity a reasonable factual basis to infer that one [d]efendant is inducing the other to directly infringe." (D.I. 11 at 6-7)

Defendants argue that plaintiff does not provide facts which plausibly show that one defendant, via the corporate relationship, specifically intended the other to infringe and knew that the acts constituted infringement. (D.I. 16 at 2) The court agrees that plaintiff has not identified any actions whereby defendants assisted each other or anyone else to infringe the '237 patent, relying instead on the circular logic that because defendants have directly infringed the '237 patent, they must be inducing and contributing to the infringement of the '237 patent. This is insufficient to meet the Rule 8 standard, as it does not provide notice of the induced acts which allegedly constitute patent infringement.

As to contributory infringement, plaintiff does not offer any argument or facts directed to show that defendants "knew that the combination for which [their] component was especially designed was both patented and infringing" or that the components "have no substantial non-infringing uses." (D.I. 16 at 1-2) Indeed,

12

plaintiff's brief does not discuss contributory infringement. (D.I. 16) For the foregoing reasons, the court grants defendants' motion to dismiss the claims of indirect infringement.

## V. CONCLUSION

For the reasons discussed above, defendants' motion to transfer (D.I. 7) is denied and defendants' motion to dismiss the indirect infringement claims (D.I. 5) is granted. An appropriate order shall issue.